Chief Judge Fuld.
The plaintiff, Hi Fashion Wigs, Inc., and the defendant-appellant, Peter Hammond Advertising, Inc. (hereafter referred to as Hammond), entered into a contract whereby the plaintiff retained Hammond as its agent to place its advertising in various magazines. The plaintiff’s president, Mike Schuminsky, the impleaded defendant-respondent herein, signed an agreement personally guaranteeing payment by the plaintiff of all moneys due to Hammond under the contract. The sole question posed by this appeal is whether Schuminsky is subject to the jurisdiction of our courts under our long-arm statute (CPLR 302, subd. [a], par. 1).
The contract between the plaintiff, an Oklahoma corporation which does business in New York, and Hammond, a New York corporation, was apparently worked out by Schuminsky, on behalf of the plaintiff, and Peter Hammond, president of the advertising company, on its behalf, in August of 1971 in Okla *585 homa. It was then arranged that, as part and parcel of the deal, Schuminsky—who, with his vice-president, owned all of the plaintiff’s capital stock—would guarantee payment of any sums that might become due. In September, the prime contract was signed and for several months Hammond rendered, and the plaintiff paid for, its services in New York, as required by the contract.
Early in 1972, the plaintiff brought suit against Hammond, seeking damages for allegedly fraudulent actions by that defendant under the contract—excessive billing, improper, unauthorized and inadequate advertising and the like. Hammond, in addition to general denials, interposed two counterclaims for the ‘[1] agreed price and reasonable value” of its services and impleaded Schuminsky, asserting a cause of action against him based on the aforesaid guarantee. The plaintiff’s attorney moved to dismiss Hammond’s third-party summons and cause of action against Schuminsy on the ground that New York did not have jurisdiction over him.
A hearing was held on that issue. Although the plaintiff corporation has an office in New York City, Schuminsky, an Oklahoma resident, denied ever having done business in New York as an individual.[1] Although the guarantee had been drafted in Oklahoma, it is not clear from the record just where and when Schuminsky signed it. Be that as it may, it was delivered by him, with his signature affixed, to Mr. Hammond in the latter’s office in New York City in November, 1971. All other matters pertaining to both the contract and the guarantee are likewise New York-based. As contemplated, Hammond performed the work of preparing the advertising copy and materials in New York City; it was there too that all of the plaintiff’s advertisements were placed with the media; all of the plaintiff’s payments under the contract were made to Hammond in its New York office; and the place agreed upon for performance of the guarantee was also in that office.
A divided Appellate Division (41 A D 2d 656), affirming the court at Special Term, concluded that Schuminsky had not con *586 ducted such “ purposeful activity ” in New York as to bring him within the purview of our “ long-arm ” statute.
CPLB 302 (subd. [a], par. 1) vests in the courts of New York “ personal jurisdiction over any nondomiciliary * * * who, in person or through an agent * * * 1. transacts any business within the state ” as to any cause of action arising from such transaction. As we had occasion to observe a few years ago, CPLB 302 was designed ‘ ‘ to extend the jurisdiction of our State courts to nonresidents who have ‘ engaged in some purposeful activity [here] * * * in connection with the matter in suit’”, and, we added, a “ single transaction in New York ” was sufficient to comply with the demands of the statute. (Parke-Bernet Galleries v. Franklyn, 26 N Y 2d 13,16; Longines-Wittnauer v. Barnes & Reinecke, 15 N Y 2d 443, 456.)
“ [T]he clearest sort of case in which our courts would have 302 jurisdiction”, the court wrote in Parke-Bernet Galleries (26 N Y 2d 13,17, supra), is “ where a defendant was physically present at the time the contract was made ”. That was the situation in the case before us. In effect, Hammond offered to enter into an advertising contract with plaintiff corporation only in return for Schuminsky’s personal guarantee; that is, the advertising concern requested Schuminsky’s acceptance of its offer in the form of a promise to pay if the plaintiff failed to do so. The offer could not ripen into a contract until Schuminsky accepted it, and acceptance required the giving of the requested guarantee. The only evidence in the record of such acceptance was his delivery of the guarantee to Mr. Hammond in New York City. In other words, that delivery constituted his acceptance, and, under elementary contract principles, the contract of guarantee did not come into being until he delivered the signed instrument of guarantee in New York. (See, e.g., Davis v. Wells, 104 U. S. 159,166; Security Nat. Bank v. Andrews, 53 N. D. 328, 331; see, also, White v. Corlies, 46 N. Y. 467, 469-470; 1 Corbin, Contracts [1963], § 68, p. 286.)
The delivery of the guarantee was far from being merely the “last act marking the formal execution of the contract” (cf. Longines-Wittnauer v. Barnes & Reinecke, 15 N Y 2d 443, 457, supra) which might not, without more, suffice to subject Schuminsky to this State’s jurisdiction. So essential was his delivery of the guarantee to its validity and existence as a con *587 tract that Schuminsky must be deemed to have “ purposefully ” availed himself ‘ ‘ of the privilege of conducting activities within [this] State,” thereby “invoking the benefits and protections of its laws.” (Hanson v. Denckla, 357 U. S. 235, 253.) Since the contract of guarantee was made in this State‘by Schuminsky’s personal delivery of the instrument to the defendant in New York, it follows that the New York courts have jurisdiction over him.
We reach the same conclusion even if we were to assume that the contract of guarantee was not made in New York. We agree with Justice Hopkins, dissenting below, that, “ On the total facts ” and “ [1]ooking at the transaction as a whole,” Schuminsky engaged in ‘ * that kind of purposeful activity * * * which satisfies the statute [OPLE 302] and renders it reasonable that [he] should answer in New York in the compass of the action which was brought by the corporation of which [he] is president ” (41 A D 2d, at p. 657). In point of fact, apart from the circumstance that the guarantee had been drafted in Oklahoma and that Schuminsky lived there, every incident pertaining to it was New York-connected. Thus, in addition to the fact that the guarantee was personally delivered by Schuminsky in New York City, the plaintiff corporation, of which Schuminsky was president and half owner, did business in New York, the contract between the plaintiff and Hammond involved advertising services to be performed entirely in this State, and payment not only for such work but also on the guarantee—if the plaintiff defaulted on its contract—was to be made here. And, beyond all this, a regard for reason and fair play almost demands that Hammond, who was obliged to answer and defend the complaint of a closely held corporation of which Schuminsky was president, should not be compelled to go to some other jurisdiction to enforce, the latter’s personal guarantee of his company’s performance. Certainly, Schuminsky’s “ contacts ” with this State were, such “ that the maintenance of the [third-party] suit does not offend 1 traditional notions of fair play and substantial justice.’ ” (International Shoe Co. v. Washington, 326 U. S. 310,316; see, also, McGee v. International Life Ins. Co., 355 U. S. 220, 223.)
Ferrante Equip. Co. v. Lasher-Goldman Corp. (26 N Y 2d 280) —upon which the plaintiff and Schuminsky rely—is clearly *588 distinguishable from the case before us. All that we there decided was that the mere performance of a contract in New York, when it is guaranteed elsewhere and the parties transacted no other business with respect to it in this State, would not, in and of itself, be sufficient to subject either party to the process of our courts.
The order of the Appellate Division should be reversed, with costs in all courts, and the motion of the impleaded defendant-respondent to dismiss the defendant-appellant’s third-party summons and cause of action should be denied.
Judges Burke, Breitel, Jasen, Gajbrielli, Jones and Waohtler concur.
Order reversed, etc.

. There is an affidavit by Hammond’s vice-president—"which is not specifically contradicted — that, when he called Mr. Schuminsky in Oklahoma, he was given a telephone number where he “ could reach him at his New York office.”