CHEMICAL BANK, Plaintiff,

v.

MAJOR REALTY CORPORATION,
Defendant.

No. 77 Civ. 1509.

United States District Court,
S. D. New York.

Sept. 28, 1977.

Zalkin, Rodin & Goodman, New York City, for plaintiff; by Henry Lewis Goodman, Andrew D. Gottfried, New York City, of counsel.

Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for defendant; by Michael F. Armstrong, Warren H. Colodner, Jerry Simon Chasen, New York City, of counsel.

OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, a New York banking corporation, brought this diversity action to recover

the principal amount, plus interest, of a promissory note executed by defendant, a Delaware corporation with offices in Florida. Jurisdiction is based on Rule 4(e), F.R. Civ.P., and N.Y.C.P.L.R. 302(a) and 313; service of process was made on defendant at its Florida offices.

N.Y.C.P.L.R. 302(a)(1)—New York's long arm statute—provides for personal jurisdiction to be exercised over a nondomiciliary "who in person or through an agent . . transacts any business within the state" so long as the cause of action arises out of such transaction. Asserting that it has not "transacted business" in New York within the meaning of this provision, defendant has moved to dismiss the complaint pursuant to Rule 12(b), F.R.Civ.P., and/or to quash service.

The facts are not in dispute. Plaintiff, defendant, First National Bank of Miami (now known as Southeast First National Bank of Miami), and Union Planters National Bank entered into a Revolving Credit Agreement dated September 27, 1972, which was amended by the parties thereto on June 8, 1973. The agreement provided that plaintiff and the other two banks were to advance certain funds to defendant to be evidenced by three separate promissory notes—one payable to each of the banks— to be executed by defendant. The First National Bank of Miami (Southeast) was designated as agent for plaintiff and Union Planters National Bank (Union Planters) in administering the agreement; all monies borrowed, and payments made, by defendant were to go through Southeast, who was to receive the funds borrowed from, and distribute the repayments to, plaintiff and Union Planters. Repayment of the loans was to be secured by the assignment to Southeast, for the benefit of plaintiff and Union Planters, of a $30,000 note payable to defendant from a Florida limited partnership and defendant's mortgage interest, to which the note related, in Florida real estate. This Revolving Credit Agreement was negotiated in Florida by defendant and Southeast, which represented the other two banks.

On September 27, 1972, the day of execution of that agreement, a loan closing was held at plaintiff's New York office attended by defendant's president, assistant secretary and legal counsel, and the promissory note provided for in the Revolving Credit Agreement and sued upon in this action, was delivered by defendant to plaintiff and executed by the parties. The credit agreement was signed at the same time. Both the agreement and the note apparently were prepared in Florida.

On June 8, 1973, pursuant to defendant's request to increase the advances, a second loan closing was held at plaintiff's New York office and an amendment to the agreement was executed. Defendant's vice-president and legal counsel were present. To evidence the additional loan, defendant also executed, at this closing, a $2,500,000 promissory note payable to plaintiff. It is on the basis of the original $7,500,000 note that this suit was brought.

The New York activities relied on by plaintiff to evidence defendant's transaction of business in New York are the delivery and execution of the agreement and note upon which this action is based. There is no claim that any negotiation or preparation of these documents occurred here; indeed, defendant's representatives have attested that those activities occurred in Florida, and plaintiff does not dispute this.

In determining whether a non-resident defendant's activities in New York constitute the transaction of business within the meaning of 302(a)(1), the nature and quality of those acts, and not their quantity, control. *See George Reiner and Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). The ultimate question is whether, on the facts of each case, the totality of the defendant's New York connections evidence purposeful activity by which the defendant could be deemed to have invoked the benefits and protection of New York law in satisfaction of the dictates of due process. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Hi Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc.*, 32 N.Y. 583,

588, 347 N.Y.S.2d 47, 50, 300 N.E.2d 421 (1973).

In construing New York law in this area, federal courts have not recognized the mere formal execution of a contract in New York as the linchpin of 302(a)(1) jurisdiction. *See Galgay v. Bulletin Company, Inc.,* 504 F.2d 1062, 1064–65 (2d Cir. 1974); *American Eutectic Welding Alloys Sales Co., Inc. v. Dytron Alloys Corp.,* 439 F.2d 428, 432 (2d Cir. 1971). Plaintiff disputes that the activities in question constitute simply the ritualistic or formal execution of a contract fortuitously occurring within New York; however, defendant, relying in part on these cases, characterizes the New York execution of the documents in issue as simply "perfunctory" in nature and thus not the type of purposeful activity intended to be encompassed by 302(a)(1).

In a most recent pronouncement in the area, the New York Court of Appeals, in *George Reiner and Co., Inc. v. Schwartz, supra,* held that a non-resident defendant's physical presence in New York at the time of the negotiation and execution of the contract in issue, which established a continuing relationship between the parties, was a clear case of 302 jurisdiction. In so acknowledging, it reviewed and implicitly reaffirmed its prior holdings in the area, one of which was *Hi Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc., supra.* In that case, 302 jurisdiction was upheld over a non-resident third party defendant who had come to New York to deliver a personal guarantee on a contract. The court reasoned that the delivery of the guarantee was so essential to its existence as a contract that it was not "merely the 'last act marking the formal execution of the contract' . . . which might not, without more, suffice" for jurisdiction, *Id.,* 347 N.Y.S.2d at 50, 300 N.E.2d at 423; but rather constituted the acceptance of the offer and the making of a contract in New York. Since the non-resident defendant

was "physically present at the time the contract was made," the situation presented "the clearest sort of case in which our courts would have 302 jurisdiction." *Id.* at 49, 300 N.E.2d at 423 *citing Parke-Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506 (1970).

The instant situation is clearly akin to that presented in *Hi Fashion Wigs.** The delivery and execution of the documents in New York were not the mere formal and perfunctory acts that defendant would have them viewed as; nor was the signing of the documents in New York merely a fortuitous occurrence. The New York closing was rather a planned and purposeful act which constituted the very essence of the substantial indebtedness for which defendant is sought to be held. The essential nature of the act is underscored by defendant's subsequent return to New York for the execution of the amendment and additional note. With the delivery and execution of the documents here, a complex credit transaction was culminated and defendant's obligations thereunder came into existence. It is true that the agreement provided for funds to be advanced and repaid through Southeast, a Florida intermediary; however, the monies, of which defendant would and did have use, unquestionably originated out of New York. Notwithstanding Southeast's function, moreover, the activities here resulted in the intentional creation of a continuing relationship with a New York bank. Under these circumstances, it is not unfair to hold that defendant, by its acts, "purposely avail[ed] itself of the privilege of conducting activities" in New York, *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240, so as to render itself liable to personal jurisdiction in this state in a suit arising out of those activities.

Accordingly, defendant's motion is denied.

SO ORDERED.

---

* I note that the Court of Appeals acknowledged in *Hi Fashion Wigs* that the same result would obtain absent a New York contract since the totality of the contacts were New York based, including the fact that the non-resident defendant was the president of the plaintiff corporation which did business in New York. However, *that the case was the subject of alternate analyses does not strip the holding discussed above of its precedential value.*