**METROPOLITAN AIR SERVICE, INC., Plaintiff,**

v.

**PENBERTHY AIRCRAFT LEASING COMPANY, Penberthy Lumber Company, Inc., Defendants.**

**No. 86 CIV 3019 (LBS).**

United States District Court, S.D. New York.

Oct. 17, 1986.

Fox Glynn & Melamed, New York City, for plaintiff; John R. Horan, Richard N. Chassin, of counsel.

Schwarzfeld, Ganfer & Shore, New York City, for defendants; Steven J. Shore, of counsel.

SAND, District Judge.

Plaintiff, Metropolitan Air Services, Inc. ("Metropolitan") brings this action under 28 U.S.C. § 1332(a)(1), (c) (1982), alleging that defendants Penberthy Aircraft Leasing Company ("Palco") and Penberthy Lumber Company, Inc. ("Lumber") owe plaintiff commissions for services performed by plaintiff in connection with the location of potential purchasers or lessees for defendants' aircraft equipment. Defendants make a motion to dismiss under Rule 12(b)(2) for lack of personal and subject matter jurisdiction and for sanctions under Rule 11. For the reasons stated herein, defendant's motion to dismiss is granted and defendant's motion for sanctions is denied.

Plaintiff Metropolitan is a corporation duly incorporated under the laws of the State of New York. Metropolitan is a company engaged in the business of providing brokerage and other services to persons seeking to lease, sell, or purchase aircraft. Defendant Palco is a partnership, with its principal place of business in California. Palco is in the business of purchasing and leasing aircraft. Defendant Lumber is a corporation, incorporated under the laws of California, with its principal place of business in California. Though mainly in the business of buying and selling lumber, Lumber has an interest in aircraft for the use of its related companies (apparently including Palco) and others.

The relevant facts as reflected from the papers submitted are as follows. The dispute between the parties arose from a brokerage agreement that existed during late 1980 and 1981, under which plaintiff attempted to obtain purchasers or lessees of certain aircraft for defendants. It appears that Metropolitan solicited this agency arrangement from New York, first by telephoning defendants in California, and later by telex. Defendants accepted plaintiff's offer by sending a telex from California to New York.

Plaintiff performed the services agreed to in the contract for approximately three months, from December 1980 to February 1981, entirely in New York. Such services included providing potential buyers and lessees for defendants and engaging in discussion of terms of sales or leases. The defendants allege that plaintiff's negotiations never resulted in the actual placement of aircraft for defendants. However, plaintiff alleges as the basis for this action that defendants did in fact enter into a lease of aircraft in December 1981 to Puerto Rico International Airlines, a Florida corporation, as a result of plaintiff's services, entitling plaintiff to at least $150,000 in commissions.

During the duration of the contract between Metropolitan and defendants, the parties communicated between New York and California regularly by telex and at least infrequently by telephone. No one on behalf of defendants ever actually visited

New York during the period in question. In fact, the California based defendants allege that Lumber does not regularly transact business in New York, and that Palco has "never" transacted business in New York, does not advertise in New York, and does not supply goods or services in New York. The defendants claim, therefore, as the basis for their motion to dismiss, that a New York court may not lawfully maintain jurisdiction over them. Plaintiff maintains, however, that defendants purposefully availed themselves of New York to obtain by contract the services of a New York citizen in such a way that they should have expected to be subject to the jurisdiction of its courts.

Where, as here, subject matter jurisdiction is based on diversity, federal courts sitting in New York apply New York state law, subject only to federal constitutional limitations, to determine whether defendants are amenable to suit in New York. *Arrowsmith v. United Press International*, 320 F.2d 219, 223–25 (2d Cir.1963); *Chemco International Leasing, Inc. v. Meridian Engineering, Inc.*, 590 F.Supp. 539, 541 (S.D.N.Y.1984). Plaintiff bears the burden of proving by a preponderance of the evidence that the court has jurisdiction over defendant Palco and Lumber. *Chemco International, Inc.*, 590 F.Supp. at 541.

Plaintiff maintains that the court's jurisdiction can be based on CPLR § 302(a)(1), which provides that "[a] court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... [t]ransacts any business within the state...." N.Y.Civ.Prac. Law § 302(a)(1) (McKinney Supp.1986). Although not requiring regular and systematic activities, the transacting business test requires "some purposeful activity within the state giving rise to at least some minimum contacts between the forum and the party over whom it is asserting jurisdiction." *Chemco International, Inc.*, 590 F.Supp. at 541 (quoting *Klein v. E. W. Reynolds Co., Inc.*, 355 F.Supp. 886 (S.D.N.Y.1973)). In other words, any application of the state's jurisdictional statute must meet the federal con-

stitutional requirement that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1945)). Furthermore, in determining whether section 302(a)(1) jurisdiction exists, the court must examine not only isolated acts, but the "totality" of defendants' activities conducted within the forum. *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 308 (S.D.N.Y.1983).

■ The New York courts have availed themselves of many opportunities to interpret CPLR § 302(a)(1), and to discuss the significance of various types of forum contacts for determining whether jurisdiction over defendants may be properly asserted in accordance with the principles outlined above. A review of the New York cases indicates that the contacts defendants Palco and Lumber have had with New York are insufficient to establish the jurisdiction of this Court.

First, because the defendants were not physically present within the state at the time the contract was made, this is not the "clearest sort of case in which our courts would have 302 jurisdiction." *George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 652, 394 N.Y.S.2d 844, 847, 363 N.E.2d 551, 553–54 (1977) (quoting *Hi Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc.*, 32 N.Y.2d 583, 586, 347 N.Y.S.2d 47, 49, 300 N.E.2d 421, 422 (1973); *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506, 508 (1970)). Not only were defendants physically absent from New York during the formation of the contract, but the parties indicate that defendants' communications with plaintiff during the duration of their relationship were limited to telex and telephone. The United States Supreme Court has recognized the "ines-

capable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State...." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Nevertheless, the New York Court of Appeals has not often recognized jurisdiction where physical presence in New York is lacking, despite policy statements that physical presence is not a prerequisite to jurisdiction. *See* 1 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 302.08 (1986) and cases cited therein; *cf. Parke-Bernet Galleries, Inc.,* 26 N.Y.2d at 17, 308 N.Y. S.2d at 340; 256 N.E.2d at 508.

In the exceptional cases where New York courts assert personal jurisdiction absent the physical presence of the defendant, the courts require significant alternative contacts—indeed, more significant than exist in this case. For instance, in *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), the court found jurisdiction when the defendant, although not physically present in New York, actively participated in an auction in New York by means of an open telephone line. The court said that "defendant, in a very real sense, projected himself into the auction room." *Id.* at 18, 308 N.Y.S.2d at 340, 256 N.E.2d at 508. In *Rothschild v. Thompson,* 78 A.D.2d 795, 433 N.Y.S.2d 6 (1980), the First Department sustained jurisdiction over an Alabama businessman in an action brought by his New York stockbroker. Although never entering the state, defendant's telephone and mail communications (sending checks and securities into New York) resulted in "some 25 transactions in four months." *Id.* at 795, 433 N.Y.S.2d at 7; *see* 1 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 302.06 (1986); *see also, e.g., Hi Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc.,* 32 N.Y.2d 583, 347 N.Y.S.2d 47, 300 N.E.2d 421 (1973) ("every incident" pertaining to the relevant transaction was New York connected); *Wichita Federal Savings and Loan Asso-*

*ciation v. Comark,* 586 F.Supp. 940 (S.D. N.Y.1984) (jurisdiction found where defendant's New York account was traded in amounts exceeding one hundred million dollars daily). The Court finds that defendants' contacts with New York in the instant case—the exchange of telexes and telephone calls with a New York plaintiff—although admittedly in furtherance of defendants' California business activities, fail to meet the level of contacts that the New York cases illustrate is necessary to sustain jurisdiction in the courts of this state.

In fact, the New York courts that specifically encounter defendants whose sole contact with the state is by way of telephone and mail, refuse to exercise jurisdiction. *See, e.g., Glassman v. Hyder,* 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968) (transaction by mail and telephone between New York real estate broker and non-resident owner insufficient for jurisdiction); *L.F. Rothschild, Unterberg, Towben v. McTamney,* 89 A.D.2d 540, 452 N.Y.S.2d 630 (1982), *aff'd,* 59 N.Y.2d 651, 463 N.Y. S.2d 197, 449 N.E.2d 1275 (1983) (defendant's out-of-state telephone communications resulting in telephonic stock purchase order from plaintiff New York stock brokerage firm constituted insufficient contacts); *DelBello v. Japanese Steak House, Inc.,* 43 A.D.2d 455, 352 N.Y.S.2d 537 (1974) (no jurisdiction where defendant advertised in New York newspaper and all contact between out-of-state defendant-franchisor and in-state franchisee occurred by mail and telephone).

Plaintiff goes to great lengths in attempting to demonstrate that the contract was formed in New York when an acceptance sent by defendants via telex from California was received by plaintiff in New York. A determination of place of contracting in this context turns on whether the "mailbox rule" applies to contracts created through telex, an issue apparently still unresolved in the United States. *See Restatement (Second) of Contracts* § 64 (1981) (adopts mailbox rule for determining place of contract acceptance). The Court finds the resolution of this issue unneces-

sary to resolve this motion, however. This is because the place where a contract is performed is more important for purposes of jurisdiction than the place where a contract is executed, and place of contracting alone is an insufficient basis on which to rest jurisdiction. *See Aero-Bocker Knitting Mills, Inc. v. Allied Fabrics Corp.*, 54 A.D.2d 647, 648, 387 N.Y.S.2d 635, 637 (1976) (citing *Longines-Wittnauer Watch Co., Inc. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965)); *Alan Lupton Associates, Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 7, 482 N.Y.S.2d 647, 651 (1984).

It is when we look to the place of performance of the contract that plaintiff fails to satisfy the requirements of New York law. There appears to be no question that plaintiff performed the contract entirely from New York by telephone and telex in an attempt to locate buyers or lessees for defendants. Plaintiff thus acted as defendants' agent under the contract. New York courts have drawn a significant distinction for purposes of jurisdiction between acts of the plaintiff-agent and those of the defendant-principal. Had plaintiff been a third party attempting to sue the California defendants in New York court based on the acts of defendants' New York agent, jurisdiction would clearly lie to reach the out-of-state defendants. *See, e.g., Parke-Bernet Galleries, Inc.*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970). But because plaintiff himself acted as defendants' agent, this Court must reach a different result.

This case is controlled by *Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y. S.2d 70, 294 N.E.2d 855 (1973), which reverses on the dissenting opinion at the Appellate Division. 40 A.D.2d 769, 337 N.Y. S.2d 285 (1972). *Haar* establishes the principle that in a suit between an agent and his out-of-state principal, there is no jurisdiction over the principal where the plaintiff-agent "is relying on his own activities within the State, rather than on defendant's *independent* activities." 40 A.D.2d 769, 770, 337 N.Y.S.2d 285, 288 (1972) (dissenting opinion) (emphasis in original); *see also, e.g., Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968); *Geller v. Newell*, 602 F.Supp. 501 (S.D.N.Y.1984). Thus, it is crucial that the defendants' purposeful contacts in New York, independent of an agent's in-state activities, are sufficient in themselves to sustain jurisdiction. *See, e.g., Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982) (jurisdiction over out-of-state principal where there was in-state action by agent upheld based on independent contacts of principal). Plaintiff may not, as it attempts to do here, use its own contractual performance in New York as a basis to gain this Court's jurisdiction over the action.[1]

Because, as demonstrated above, the defendants' independent contacts fail to meet the level required for this Court to assert its jurisdiction, defendants' motion to dismiss for lack of personal jurisdiction must be granted. Having come to this conclusion, the Court finds it unnecessary to reach defendants' contention that subject matter jurisdiction is also lacking.

---

1. The *Haar* rule has been criticized. *See* 1 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 302.06 (1986). The Court is also mindful of the Fourth Department's attempt to qualify this *per se* rule. *See Alan Lupton Associates, Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 482 N.Y.S.2d 647 (4th Dept. 1984), which contends, on facts similar to the ones here, that the critical factor is the degree of control the defendant principal exercises over the agent, and that the agent's acts may be attributed to the nondomiciliary principal if the principal requested performance of the activities and the activities benefit it. *Id.* at 8, 482 N.Y.S.2d at 651; *see also DelBello v. Japanese Steak House, Inc.*, 43 A.D.2d 455, 457, 352 N.Y.S.2d 537, 540 (4th Dept. 1974) (no jurisdiction over out-of-state principal where it exercised no control or dominion over plaintiff's activities); *Wichita Federal Savings and Loan Association v. Comark*, 586 F.Supp. 940, 944 (S.D.N.Y.1984) (defendant may be found to have engaged in purposeful transaction when contract calls for plaintiff to perform activities in New York for benefit of defendant). This Court is, of course, bound to follow *Haar*. *See* cases cited in 1 J. Weinstein, H. Korn & A. Miller, *supra*, at ¶ 302.06.

Defendants' motion for Rule 11 sanctions insofar as Lumber is concerned has some force since it appears that plaintiff named Lumber as a defendant solely because of some uncertainty as to the proper party defendant. Plaintiff's protestations of his good faith ignore the impact of Rule 11 as recently amended and as currently interpreted. However, since we find that the circumstances giving rise to plaintiff's uncertainty were reasonably related to the manner in which defendants conducted themselves, we deny Rule 11 sanctions as to Lumber. No grounds exist for Rule 11 sanctions as to Palco.

SO ORDERED.