**Hussein NASSAR and Insearch Marketing and Trading Company, Plaintiffs,**

v.

**FLORIDA FLEET SALES INC.; TNC, Inc.; Frederick Roccanti, President of Florida Fleet Sales Inc. and TNC; Fred M. Dellorfano, attorney-in-fact for Florida Fleet Sales Inc.; Ex–Im International, Ltd.; Anthony Dellorfano, President of Ex–Im International; National Bank of Kuwait Sak, New York Branch; Worldwide Surety Company; and Worldwide Business Services Inc., Defendants.**

**No. 97 Civ. 9269(DLC).**

United States District Court, S.D. New York.

Feb. 4, 1999.

Christopher R. Carpentieri, C.R. Carpentieri, P.C., New York City, NY, for plaintiffs.

Fred M. Dellorfano, Montgomery, PA, pro se individual defendant.

## *OPINION AND ORDER*

COTE, District Judge.

Plaintiffs seek to recover against the defendants for a variety of actions relating to the sale and export of a number of trucks. Defendant Fred M. Dellorfano ("Dellorfano"), who was involved with plaintiffs' subcontractor, has filed a motion to dismiss on the ground that this Court lacks personal jurisdiction over him. For the reasons stated, Dellorfano's motion is denied.

## BACKGROUND

This case involves a fairly complex sales transaction, many of the facts of which are described in this Court's Opinion and Order dated January 5, 1999, granting the motion for summary judgment of National

Bank of Kuwait, New York, New York ("NBK New York"). NBK New York was the advising and confirming bank under the letter of credit that was used to effect payment for the sales transaction.

The relevant facts for this motion to dismiss are undisputed. Dellorfano was never a resident of New York and has never maintained a place of business in New York. Dellorfano does not have any employees or agents in New York and has never maintained an office, mailing address, or telephone number in New York. Dellorfano has never owned any assets, never paid any taxes, or maintained a bank account in New York.[1]

The principal New York actions alleged by plaintiffs consist of (1) Dellorfano participating in a meeting in New York on October 10, 1991, where a performance bond was presented and Dellorfano received an assignment of proceeds for 10%, equal to $303,662.50, of the letter of credit amount to facilitate the sale of the trucks, and (2) another meeting on December 9, 1991, in New York that resulted in Dellorfano entering into an escrow agreement for the release of funds equaling $440,000 under the letter of credit ("Escrow Agreement") to his escrow account in Massachusetts. Dellorfano admits that during the course of the sales transaction, he had two or three meetings with plaintiffs at the offices of NBK New York with respect to draws on the letter of credit. Dellorfano alleges, however, that at these meetings he was present as attorney-in-fact for Florida Fleet Sales, Inc. ("Florida Fleet"), a Florida entity that was a second beneficiary under the letter of credit and a subcontractor of plaintiffs. Plaintiffs had subcontracted with defendant Roccanti to supply the trucks through either Florida Fleet or another entity controlled by him (the "Truck Agreement"). The Truck Agree-

---

1. Dellorfano also states that he has never entered into a contract with any New York business, citizen, or resident, but this statement is contradicted by the documentary evidence of the Escrow Agreement described below, which he signed in his own name for the benefit of NBK New York, a New York entity.

ment was entered into in Atlanta, Georgia in September or October of 1991.

This action was filed on December 16, 1997, and alleges six causes of action. Dellorfano states that a similar action is pending in federal court in the District of Massachusetts. Three of the six causes of action in this District's complaint name Dellorfano. Each of these sound in contract rather than tort. The first and sixth causes of action allege that Dellorfano breached the Truck Agreement by failing to deliver the trucks. The fifth cause of action alleges that Dellorfano breached the Escrow Agreement.

## DISCUSSION

■ In a diversity case or a case arising under a federal law that does not provide for service of process on a party outside the state, the issue of personal jurisdiction must be determined according to the law of the forum state. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996). "If the exercise of jurisdiction is appropriate under [the state's statutes], the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997). It is well established that on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Where, as here, discovery has taken place, this showing includes factual allegations that would establish jurisdiction. *See id.*

■ Plaintiffs argue both (1) that this Court has general jurisdiction over Dellorfano under CPLR § 301, and (2) that this Court has specific jurisdiction over defendant under CPLR § 302(a). Dellorfano denies that the Court has general jurisdiction over him. He does not deny that his contacts with New York provide a basis for jurisdiction under Section 302(a) for all three causes of action. He argues, howev-

er, that the facts as alleged in the amended complaint are insufficient as a matter of law and that he is protected by the fiduciary shield doctrine. Plaintiff is not limited to the facts pleaded in the complaint and may meet its jurisdictional burden through facts pleaded in response to the Rule 12(b)(2) motion. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Similarly, Dellorfano's reliance on the fiduciary shield doctrine is misplaced; the New York Court of Appeals held in *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199, 522 N.E.2d 40 (1988), that this doctrine should not apply to any provision of New York's long-arm statute. *See also Retail Software Serv. Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir.1988).

■ There is personal jurisdiction over Dellorfano for the causes of action at stake here. Under CPLR § 302(a)(1), New York's long-arm statute, a court may exercise personal jurisdiction over an out-of-state defendant if that defendant "transacts any business within the state" and the cause of action "arise[s] from" those transactions. *See Agency Rent A Car*, 98 F.3d at 29. This test must be met for each cause of action asserted. *See* CPLR § 302(c). With respect to the "arising under" prong, a claim arises out of a party's transaction of business in New York if there is "a substantial nexus" between the transaction of business and the cause of action sued upon. *See, e.g., Agency Rent A Car*, 98 F.3d at 31; *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981).

■ In order to meet the "transacting business" element, a plaintiff must show that the defendant "purposefully avail[ed] [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus.*, 806 F.2d at 365 (citation and quotation marks omitted). Courts should examine the totality of defendant's contacts with New York, rather than focus on each isolated event. *Id.*

■ Although a single purposeful act in New York can be sufficient to support jurisdiction, *see Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198, 522 N.E.2d 40 (1995), the nature and quality of the New York contacts must be examined to determine their significance. *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 847, 363 N.E.2d 551 (1977). In judging whether there are sufficient contacts, the New York Court of Appeals has cautioned that

we should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters or where they conduct substantial general business activities.

*McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604 (1967). Thus, New York's highest court eschewed an interpretation of Section 302 that would find jurisdiction over "every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York...." *Id.* at 37, 229 N.E.2d 604.

■ There is no question that Dellorfano is amenable to suit in New York for the alleged breach of the Escrow Agreement. Dellorfano attended a meeting in New York on the Escrow Agreement prior to its execution and executed it in New York. Moreover, the relevant performances, including a transfer of the money to Dellorfano's account and an agreement to return the funds after ten days, are contemplated to take place in New York. As a result, Dellorfano's activities in connection with the Escrow Agreement constitute "transacting business" within the meaning of section 302(a). *See George Reiner*, 394 N.Y.S.2d at 847, 363 N.E.2d 551.

■ The other two claims, the first and sixth causes of action allege breaches of the Truck Agreement.[2] Under New York law,

in order for meetings in New York which are subsequent to the formation of the contractual relationship to confer jurisdiction [under Section 302(a)(1)], the meeting must be essential to the business relationship or at least substantially advance it.

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F.Supp. 1131, 1136 (S.D.N.Y. 1997). *See also APC Commodity Corp. v. Ram Dis Ticaret, A.S.*, 965 F.Supp. 461, 465 (S.D.N.Y.1997) ("The defendant purposefully availed itself of the privilege of conducting activities in New York that were critical to the transaction at issue in this case."); *Cosmetech Int'l v. Der Kwei Enter. and Co.*, 943 F.Supp. 311, 318 (S.D.N.Y.1996) ("In considering relevance of [defendant's] visits to New York, the Court must look to the specific facts of each visit, and determine whether the Defendant performed purposeful acts in New York in relation to the contract.").

Here, the two New York meetings were both essential to performance of the Truck Agreement. The first meeting on October 10, 1991 was an essential step in the course of performance. At that meeting, Dellorfano presented a performance bond to guarantee Florida Fleet's performance. Dellorfano then personally received the first advance under the letter of credit in the amount of $303,662.50. The second meeting on December 9, 1991, was equally essential to the contract. At that meeting, the parties discussed and signed the Escrow Agreement. This collateral agreement was a last ditch effort by the parties

**2.** The Complaint states that the Truck Agreement was signed by Roccanti personally and that he was to use one of his companies, either Florida Fleet or another, to perform the contract. By contrast, Nassar's affidavit only says generally that Insearch "agreed with Defendants" when it entered into the agreement. As a result, it is not clear that Dellorfano was a signatory to the Truck Agreement and plaintiffs have articulated no theory to bind him as

a nonsignatory. Although relevant to the eventual viability of plaintiffs' claim, the issue of whether Dellorfano is bound by the Truck Agreement is not before the Court. Nonetheless, courts have considered whether a party is bound by an agreement in evaluating the strength of the forum contacts. *See Packer v. TDI Systems, Inc.*, 959 F.Supp. 192, 200 (S.D.N.Y.1997).

**448**

to allow Florida Fleet to perform under the contract by facilitating payment for shipment of the trucks by air. It also involved a transfer of a substantial amount of money, $440,000, and required that Dellorfano perform part of the Escrow Agreement in New York. The failure of this arrangement is a key step in the chain of events leading to the alleged breach of the Truck Agreement.

Although not substantial in number, the two New York meetings came at key moments in the performance of the Truck Agreement and were essential to the attempts to perform and the eventual breach. As such, the two meetings are sufficiently important to the development of the contractual relations with plaintiffs that it is proper for this Court to exercise jurisdiction over Dellorfano on the basis of his key role in those meetings for the first and sixth causes of action. *See Hi Fashion Wigs v. Peter Hammond Adver.*, 32 N.Y.2d 583, 347 N.Y.S.2d 47, 50, 300 N.E.2d 421 (1973) (delivery of guarantee to New York essential to contract).

## CONCLUSION

This Court has specific personal jurisdiction over Dellorfano for purposes of each of the causes of action brought against him. As such, defendant Dellorfano's motion to dismiss is denied.

SO ORDERED.

## *ORDER*

On October 22, 1998, in response to an Order of this Court dated October 5, 1998, the Court received a letter from counsel for plaintiffs indicating that only two of the defendants, National Bank of Kuwait SAK, New York Branch, and Fred M. Dellorfano had been served. On January 5, 1999, the Court issued an Opinion and Order granting defendant National Bank of Kuwait's motion for summary judgment. On February 3, this Court issued an Opinion and Order denying defendant Fred M. Dellorfano's motion to dismiss for lack of personal jurisdiction.

IT IS HEREBY ORDERED that the Complaint is dismissed without prejudice with respect to the remaining defendants, except with respect to defendant Fred M. Dellorfano, because of plaintiffs' failure to serve those defendants or seek an extension of the time for service.

IT IS FURTHER ORDERED that defendant Fred M. Dellorfano shall have until 20 days from the receipt of this Order to file and serve an answer in this action.

IT IS FURTHER ORDERED that all pretrial inquiry by each party into the evidence and knowledge of the other, whether by interrogatories, depositions, production of documents, or other discovery methods, be completed by **May 10, 1999,** and that all pretrial motions be submitted by **May 24, 1999.** If a motion is filed, opposition papers must be submitted by **June 14, 1999,** and reply papers, if any, must be submitted by **June 28, 1999.** Either party may request to have the dates for the completion of discovery or for motions extended, and they will be extended if the party requesting the extension demonstrates that its pursuit of the action has been diligent and that there is a good reason for extending the deadline. If no extensions are granted, no pretrial motions or discovery will be permitted after these dates.

IT IS FURTHER ORDERED that within two weeks after the time for filing motions has passed if no motion is filed, or within two weeks after decision on the motion if a motion is filed, counsel for plaintiffs shall file a concise, written Pretrial Statement. As described in greater detail in this Court's Individual Practices in Civil Cases, the following documents must be filed with the Pretrial Statement: Voir Dire, Requests to Charge and a Memorandum of Law addressing all questions of law expected to arise at trial. Counsel shall file an original of this Statement with the Clerk of Court *and* serve a copy on defendant.

IT IS FURTHER ORDERED that the defendant file and serve a Pretrial State-

ment within four weeks after receipt of the plaintiff's Pretrial Statement. This Statement need take no particular form, but it *must* contain the following: 1) a statement of the facts defendant hopes to prove or contest at trial; 2) a list of all documents or other physical objects that the defendant plans to put into evidence at trial; and 3) a list of the names and addresses of all witnesses defendant intends to have testify at trial. The Statement must be sworn by the defendant to be true and accurate based on the facts known by the defendant. Defendant shall file an original of this Statement with the Pro Se Office *and* serve a copy on the attorneys for plaintiffs. The original filed with the Pro Se Office must include an affirmation of service stating the date a copy was mailed to the attorneys for plaintiffs. The *pro se* defendant may also file either proposed findings of fact and conclusions of law or a proposed jury charge, but the defendant is not required to do so.

IT IS FURTHER ORDERED that any party may be prevented from presenting at trial any information that is not included in the required Statements.

IT IS FURTHER ORDERED that when filing any papers with the Court, the parties shall provide a courtesy copy to Chambers by sending them to this Court's Pro Se Office, Room 230, United States Courthouse, 500 Pearl Street, New York, New York 10007.

IT IS FURTHER ORDERED that failure to comply with any of the terms of this Order may constitute grounds for the denial of requested relief, dismissal of the action, the entry of judgment by default, or such other action as may be just in the circumstances.

SO ORDERED.