[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
In this case, the complaint alleges that an Internal Revenue Office placed a tax lien and levy on the real property and bank accounts of the defendant Massullo. It further alleges that shortly thereafter Massullo requested the plaintiffs assistance to clear the federal lien and levy and made an agreement with the plaintiff to repay the amount expended by the plaintiff along with interest of 19% per annum. The plaintiff paid the amount Massullo owed the IRS by a cashier's check and "hand delivered it to the Internal Revenue Services' Taxpayer service Office in Norwich, Connecticut and obtained a Federal Release of Levy/Release of property from levy" in Massullo's name.
The defendant, according to the complaint, has failed to make repayment and the plaintiff has sued to recover the principal and interest owed.
Counsel for the defendant has now filed a motion to dismiss. The defendant is an Ohio resident and contests the jurisdiction of the court. It is claimed no jurisdictional facts are asserted in the complaint and the court has no jurisdiction over him because the requirements to establish jurisdiction over a non-domiciliary defendant under § 52-59b (a) can not be met. This is the so-called long arm statute and it is the only basis by which this court can exercise jurisdiction over this non-resident defendant.
The defendant also argues that the motion to dismiss should be granted because the process served on the defendant was not returned to court within the time limits set forth in § 52-46a of the Connecticut General Statutes. CT Page 5556
The resolution of this case turns on an interpretation of a subsection of § 52-59b (a) of the Connecticut General Statutes. Both sides appear to agree that the court can only acquire jurisdiction of the defendant through that so-called long arm statute and only if the non-resident defendant, pursuant to subsection (a)(1) "Transacts any business within the state."
The controlling case appears to be Zartolas v. Nisenfeld, 184 Conn. 471
(1981). That case states that our statute does not define the term "transacts any business" but notes that in enacting § 52-59b "the legislature used New York Civil Practice Law § 302 . . . as a model." The court found the interpretation given by the New York cases "pertinent" and cited several New York cases for guidance. George Reiner Co. v. Schwartz, 363 N.E.2d 551 (1977); Hi-Fashion Wigs, Inc. v. PeterHammond Advertising, Inc., 300 N.E.2d 421 (1973); Parke-BernetGalleries, Inc. v. Franklyn, 256 N.E.2d 506 (1970); Longines-WittnauerWatch Co. v. Barnes Reinecke, Inc. 209 N.E.2d 68 (1965). The court generally speaking accepted New York's definition of the phrase and said it would "construe the term `transacts any business' to embrace a single purposeful business transaction." Id., p. 474. At page 474, the court went on to say that: "In determining whether the plaintiffs' cause of action arose from the defendant's transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense and the chronology and geography of the relevant factors."
When jurisdiction is challenged under the long arm statute, the plaintiff has the burden of "establishing the facts pertaining to personal jurisdiction." Rosenblit v. Danaher, 206 Conn. 125, 140 (1988); StandardTallow Corp. v. Jowdy, 190 Conn. 48, 54 (1983).[1]
The parties can submit affidavits to resolve factual issues relevant to the jurisdictional question under the statute. The plaintiff has done so and the court is not aware of any objection to the plaintiffs submission of affidavits and documents. Rosenblit, 206 Conn. p. 142.
There are not many Connecticut cases on the "transaction of business" element of § 52-59b (a)(1); as might be expected, there are a veritable river of New York cases collected in the annotation to § 302 in McKinney's New York Civil Practice Law.
The court will review the New York cases and in doing so, has relied extensively on the McKinney commentary to § 302 of New York's Civil Practice Rules. That state's courts have no difficulty in finding jurisdiction against out of state residences in so-called "physical CT Page 5557 presence" cases. Thus, in George Reiner Co., Inc. v. Schwartz,363 N.E.2d 551 (1977), the court said . . . "as here we have the `clearest sort of case' in which our courts would have 302 jurisdiction. Here, Schwartz was physically present in New York at the time the contract, establishing a continuing relationship between the parties, was negotiated and made and the contract, made in New York, was the transaction out of which the cause of action arose. Id., p. 554. Similar to the Schwatrz case is Hi-Fashion Wigs, Inc. v. peter HammondAdvertising, Inc., supra, which was a breach of guarantee action. The court found 302 jurisdiction despite the fact that the president of the defendant company did not live in New York. But the court noted he delivered the contract to New York, the defendant company did business in New York, the contract involved services to be performed in New York and payment was to be made in New York. 300 N.E.2d at p. 423.
This is not to say that for a finding of personal jurisdiction under 302, the New York courts require the physical presence of the defendant in all cases at the time a contract was entered into. A leading cases isParke-Bernet Galleries, Inc. v. Franklyn, supra, which is interesting for its holding but also for the qualifications it makes regarding situations where assertions of jurisdiction over out of state defendants would be permissible under 302. In that case, recovery was sought for the amount the defendant bid by phone for a certain painting while an auction was going on in New York. In holding that there was 302 jurisdiction, the Court of Appeals said:
 "Applying the above principles to the case before us, we find that it falls between the situation where a defendant was physically present at the time the contract was made — the clearest sort of case in which our courts would have 302 jurisdiction (see Longines-Wiffnauer Watch Co. v. Barnes Reinecke, 261, 209 N.E.2d 68, supra; Harry Winston, Inc. v. Waldfogel, D.C. 292 F. Sup. 473) — and the situation where a defendant merely telephones a single order from outside the State — a case in which our courts would not have such jurisdiction. (See, e.g., Katz Son Billiard Prods. v. Correale Sons, 232 N.E.2d 864.) This defendant, although never actually present, was receiving and transmitting bids over an open telephone line and was an active participant in an auction held here. Moreover, he was directly assisted in this activity by Nash, who was physically present. Whether we view this case as one in which the defendant had personally engaged in purposeful activity here or as one in which — in CT Page 5558 the language of section 302 — he had engaged in such activity "through an agent" present here, there is ample basis for concluding that the defendant is subject to the jurisdiction of our courts with respect to a cause of action arising out of the auction."
The McKinney commentary on the development of New York case law under § 302 after Parke-Bernet is relevant to the issues presented in this case. The commentary states: "Nor has the court of Appeals fully expanded on the implications of its statement in Parke-Bernet itself that transactions can occur through `instant long range communications.' InParke-Bernet itself, the court distinguished the situation in which an out-of-state buyer places an ordinary phone call to New York for a single order of goods from a New York seller. Jurisdiction on such facts have been rejected in Katz Son Billiard Products v. Correale Sons . . .232 N.E.2d 864 . . . and the court reaffirmed this ruling inParke-Bernet." The commentary noted that the court has "also rejected jurisdiction in later cases in which the dealings were conducted entirely by telephone and mail Etra v. Matta . . . 463 N.E.2d 3 (1984) . . . L.F. Rothschild, Unterberg, Tobin v. McTamney, 452 N.Y.S.2d 630 . . . affd., 449 N.E.2d 1275 several telephone calls by out-of-state investors to New York broker resulting in one order was insufficient to confer jurisdiction." The commentary goes on to note that the lower New York Appellate Courts "have likewise been hesitant to find a transaction of business in New York where the out-of-state defendant communicated solely by mail, telephone, fax or some other electronic medium." The case ofSymenow v. State Street Bank Trust Co., 665 N.Y.S.2d 141 (4th Dept., 1997) is cited. In that case, a Massachusetts bank was the custodian of a group fund of which a New York plaintiff was a shareholder. The court granted a dismissal, finding the bank did not transact business under § 302 in New York where the bank had honored fraudulent or forged checks on the fund. The bank did not transact any business in New York and had no contract with the shareholder. The court held the mere wiring of monies to parties in New York would not confer jurisdiction under § 302. Id., p. 142. But all of these just discussed cases involve one discrete transaction where there is little or no evidence of pre or post transaction dealings between the parties. Cases like Correale Sons,McTamney, and Symenow can be distinguished from other New York cases where § 302 jurisdiction was found. L.F. Rothschild. Unterberg. Tobinv. Thompson, 433 N.Y.S.2d 6 (1980) and Otterbourg, Stendler, Houston Rosen v. Shreve City Apts., 543 N.Y.S.2d 978 (1989). In Thompson, the defendant had submitted 25 buy orders; in Otterbourg, the out-of-state defendant had transacted business with the New York law firm by means of 93 phone calls, numerous letters and a conference call during which a case was settled with a New York adversary. These cases support a further observation in McKinney that suggests § 302 can be "satisfied by CT Page 5559 participation in relevant New York activity that precedes or follows the actual making of the contract." (Emphasis added by this court.) TheLongines-Wittnauer case is cited where § 302 jurisdiction was found over an out-of-state seller of machinery whose agents engaged in substantial preliminary negotiations in New York and then sent employers to supervise the installation and testing of the machines for three months. 209 N.E.2d p. 69.
Finally, the McKinney commentary notes one type of case where § 302 jurisdiction is thought to be easy to find due to the nature of the transaction. The case referred to is Black River Associates v. New man,637 N.Y.S.2d 880 (4th Dept. 1996). In that case, the contract involved the purchase of New York real estate by out-of-state defendants. The negotiations for the contract and its execution were carried out by mail, phone and fax between the parties in various states, not in New York. The court held that the transaction occurred in New York for § 302 jurisdictional purposes based "on the terms and effects of defendants' unperformed promise to purchase real property in New York." Id., p. 684; cf. Zartolas v. Nisenfeld, 184 Conn. p. 478 (Connecticut real estate transaction).
The court will use the New York cases as a framework for its discussion of this case. In its analysis of the problem before it in Zartolas, our Supreme Court relied heavily on New York cases and also the Mckinney commentaries.
In this case, we have what happens to be one isolated loan transaction. Although the plaintiff submitted an affidavit indicating his business, located in our state, did business with the "defendant" corporation for several years and litigated with it in Connecticut courts, the corporation is not a defendant in this case and the defendant Massullo is just the secretary of that corporation. Furthermore, there is no indication as to how any of these just mentioned factors have anything to so with the specific loan transaction in this case except for a vague reference in the plaintiffs affidavit to the effect that he is the sole owner of a Connecticut business "from which the relationship with the defendant caused me to conclude the transaction of which the referenced case entails." Conclusory statements like this cannot be considered as jurisdictional facts under our long arm statute.
The plaintiff has also attached to his opposition brief documents indicating the defendant is an officer of a Connecticut corporation and has been involved in litigation in our courts, and has conducted banking activities in our state. He argues "certainly at the time of the indebtedness to plaintiff he was actively engaged in business in Connecticut and was a property owner in Connecticut." But the last dates CT Page 5560 on these documents is 1996, over five years before this suit was brought and again there is no indication as to how all this is related to the actual loan made in this case which is the subject of the suit. Under these circumstances, even if the court were persuaded that the defendant had numerous current business contacts and dealings in our state that would not establish the jurisdictional facts necessary to establish personal jurisdiction on this claim. It would only be relevant to the second prong of the inquiry — jurisdictional facts having been shown is it fair and does it comply with due process to subject the defendant to suit in our state?
The loan on the face of it is not related itself to the conduct or accomplishment of any business activity in the State of Connecticut but merely represents the one time payment of an indebtedness the defendant owed to the federal government. The payment to the IRS was allegedly made at its Norwich office but there is no indication why it could have been paid at or to any other IRS office whether in our state or out-of-state. In having the plaintiff pay this indebtedness for him the defendant did not invoke the benefit and protection of Connecticut law; the debt was paid and releases were secured through the operation of federal tax law. cf. Zartolas, 184 Conn. p. 475.
Because the statutory requirement of § 52-59b were not met it is not necessary for the court to decide whether the exercise of jurisdiction over Massullo would violate due process, Rosenbilt v.Danaher, supra, 206 Conn. p. 142.
The motion to dismiss is granted for failure to meet the requirements of § 52-59b of the Connecticut General Statutes.
 ___________________ Corradino, J.