[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS BY DEFENDANT JOHN MARSHALL
On or about November 12, 2001, John A. Marshall ("Marshall"), a defendant in the above-captioned action, moved to dismiss the plaintiff's claims against him on the grounds that the court lacked personal jurisdiction over him. Specifically, Marshall challenges this court's jurisdiction on the grounds that his contacts with Connecticut are so "minimal and attenuated" that both Connecticut's long arm statute and the United States Constitution fail to confer jurisdiction over him. Marshall also contends that service of process on him was insufficient.
The plaintiff Updike, Kelly Spellacy, P.C. ("Updike, Kelly"), has objected to Marshall's Motion to Dismiss Pursuant to Practice Book §10-31 and argues that Connecticut's long arm statute provides this court with personal jurisdiction over Marshall and that Marshall's contacts with the State of Connecticut are sufficient to avoid violation of the notions of fair play and due process sought to be protected by the United States Constitution.
STATEMENT OF FACTS
Prior to December 1991, each of the defendants was employed by Pan American World Airways ("Pan Am") as either a Captain, First Officer or Flight Engineering Officer. Believing that their union officials were not adequately representing their interests, the defendants, including Marshall, retained Attorney Scott Karsten of the West Hartford law firm of Sack, Spector, Barrett to represent them in a breach of fair representation claim under the Railway Labor Act, 45 U.S.C. § 151 etseq., against the Airline Pilots Association International ("ALPA") and certain individual union officials. Several defendants, including Marshall, also asked Attorney Karsten to represent them in an action against Delta Airlines. The written fee agreement entered with Attorney Karsten ("Karsten Agreement") set forth the hourly fees that would be charged by Attorney Karsten as well as the costs that would be incurred CT Page 2875 in pursuit of the defendants' claims. The Karsten Agreement further stated that if Attorney Karsten needed to affiliate with another law firm for the purposes of pursuing the defendants' claims, he would attempt to negotiate a similar fee agreement with new counsel.
On or about January 7, 1992, Karsten, acting as counsel for the defendants, entered into a written fee agreement with Updike Kelly for assistance with the prosecution of the defendants' claims ("UKS Agreement"). Each of the defendants, including Marshall, was notified by Attorney Karsten of the retention of Updike Kelly.
Following the retention of Updike Kelly, a Complaint was filed on behalf of the defendants against ALPA in the United States District Court for the District of Connecticut on January 22, 1992. Marshall was named as a plaintiff in this initial Complaint and in the later amended complaints filed in this action. The case proceeded in Connecticut until early 1993 when the case was consolidated with another case against ALPA and transferred to the United States District Court for the Eastern District of New York.
During the course of its representation of Marshall, Updike Kelly communicatbd with him via telephone, mail and facsimile. Requests for materials and information needed to compile Marshall's discovery responses were regularly exchanged via letter and telephone. Defendant Stewart Beckett, a Connecticut resident and a spokesman for the defendants, regularly sent Marshall and the other defendants updates on the status of the lawsuits.
The plaintiff has appended copies of 5 letters which Mr. Marshall wrote to Sally Choate, a paralegal at Updike Kelly or Charles Nichol, an attorney at that firm. In those letters Mr. Marshall provides information pertinent to the litigation, such as tax return information, responses to interrogatories, and even asks for advice on how to insulate any recovery in the lawsuit against ALPA from his soon to be ex-wife. This correspondence makes it clear that Mr. Marshall knew that he was represented by Updike Kelly. Moreover, the plaintiff has also presented a copy of a check for legal fees paid on behalf of Mr. Marshall to Updike Kelly.
Marshall spoke with Attorney Charles (Chuck) Nicol of Updike Kelly to prepare for his deposition and Attorney Nicol appeared at and defended Marshall's deposition in New York. Aside from attendance at the trial and at several depositions in New York and Florida, all of the legal services for which Updike Kelly was retained including, strategy meetings, legal research, brief preparation, preparation of discovery requests, objections and responses, deposition preparation and trial preparation CT Page 2876 were performed entirely in Connecticut at Updike Kelly's Hartford office and Attorney Karsten's West Hartford office; There is no question that Marshall knew that lawyers from Updike Kelly, a Connecticut firm, were representing him in the ALPA and Delta litigation.
In June 1996, Updike Kelly and Attorney Karsten tried the liability claims against ALPA to a jury. The jury returned a verdict in favor of several pilots, including Marshall. Updike Kelly continued to represent Marshall in the hotly contested litigation until the firm was terminated in 1997. Following unsuccessful attempts to resolve the damages portion of the case through mediation, the trial court granted ALPA's motion to set aside the verdict and entered judgment for ALPA and the individual union officials. The Second Circuit Court of Appeals upheld the judgment on appeal.
During the course of its representation, Updike Kelly issued several bills to the defendants' designated representative for payment from the Pilots' Fund. Many of these invoices were paid in full. However, many invoices consisting of significant attorney and paralegal services and substantial litigation costs remained unpaid.
In January 1998, Updike Kelly issued a demand letter to each of the defendants requesting payment of the outstanding invoices. The demand letter was mailed to Marshall at his 400 East 57th Street, 10K, New York, New York address and was never returned by the postal service as undeliverable. The demand letter was ignored by the defendants and, in January 1999, Updike Kelly commenced the present action seeking payment of the unpaid legal fees and costs. Updike Kelly's claims sound in breach of contract and quantum meruit.
On February 3, 1999, Deputy Sheriff Charles Ferrato left a true and attested copy of the Complaint with the Secretary of State along with a $25.00 fee. He then immediately mailed a copy of the Complaint via certified mail to Marshall at his last known address: 400 East 57th Street, 10K, New York, New York. Marshall never appeared in the action and on April 11, 2001, he was defaulted for failure to appear.
On September 11, 2001, Marshall sought to re-open the default. The court granted Marshall's motion and, on November 12, 2001, he moved to dismiss the action on the grounds that the court lacks personal jurisdiction over him and insufficient service of process.
DISCUSSION OF THE LAW AND RULING
The analysis of Marshall's challenge to personal jurisdiction involves a two-part inquiry. "The first inquiry is whether the applicable state CT Page 2877 long arm statute authorizes the assertion of jurisdiction over the [defendant]; and, if the statutory requirements are met, whether the exercise of personal jurisdiction would violate constitutional principles of due process." Hart, Nininger Campbell Associates, Inc. v. Rogers,16 Conn. App. 619, 624, 548 A.2d 758 (1988).
A Connecticut court "may assert personal jurisdiction over a non-resident defendant under General Statutes § 52-59b (a)(1), as long as that defendant transacts business within the state." Gaudjo v.Gaudjo, 23 Conn. App. 287, 298, 580 A.2d 1212 (1990). "The term `transacts business' has been construed to embrace `a single purposeful business transaction.'" Id. (quoting Zartolas v. Nisenfeld, 184 Conn. 471,474, 440 A.2d 179 (1981)). In determining whether a defendant's conduct constitutes the "transaction of business" within the state, the court does not apply a rigid formula but instead balances considerations of "public policy, common sense and the chronology and geography of the relevant factors." Zartolas, 184 Conn. at 474.
In the present matter, Marshall joined his fellow pilots and hired Connecticut attorney Scott Karsten to pursue his claim against ALPA. Attorney Karsten, acting as counsel and agent for Marshall, retained Updike Kelly, another Connecticut law firm, to assist in the prosecution of Marshall's claim in the District Court for the District of Connecticut. Certainly, the retention of two Connecticut law firms to pursue a claim in a Connecticut court constitutes the "transaction of business" within the state under Connecticut's long arm statute.
In a New York case similar to, the present one, a New York attorney was retained by California residents to perform legal services for them in connection with an estate located in New York. Mayer v. Goldhaber,313 N.Y.S.2d 87 (1969) aff'd 34 App.Div.2d 774 (1970 N.Y. App. Div). Following his representation of the defendants, the plaintiff attorney commenced an action in New York seeking to recoup attorney's fees from the California defendants. The defendants moved to dismiss the case on the grounds that the court lacked personal jurisdiction over their persons and that a prior pending action existed. Id. at 88. The defendants asserted that the court did not have personal jurisdiction as they were served out-of state, were nondomiciliaries of New York and that the cause of action was not within the purview of New York's long arm statute. Id.
The court flatly rejected the defendants' argument. "The retainer by the defendants of plaintiff for the purpose of legal representation in this state [New York] is a purposeful transaction of business within this state and the nondomiciliary defendants are thusly subject to the jurisdiction of this court by service without the state" pursuant to the long arm statute. Id. The court went on to note that "[t]o hold to the CT Page 2878 contrary would be to hold that a New York attorney retained by a nondomiciliary to perform legal services in this state cannot enforce in the courts of this state the obligation of his client to pay for the services contracted for and rendered. Such a holding would be contrary to the purpose of our long arm statute." Id. at 89.
Similarly, in English v. Smith Metzger, 901 F.2d 36 (4th Cir. 1990), involving a fee dispute between law firms, the Court found that where the defendant law firm had retained the plaintiff Virginia law firm to perform legal work, knew that the plaintiff firm would perform the work in Virginia and exchanged mail and telephone calls with the plaintiff in Virginia, the defendant's contacts with Virginia were sufficient for long arm jurisdiction to attach.
In Kazlaw Kazlaw v. A. Goodman Company, 402 N.Y.S.2d 98 (1977), the defendant retained New York counsel to perform legal work in New York. Following the representation, the plaintiff New York firm sued the defendant for legal fees and costs. The Illinois defendant challenged the New York court's jurisdiction over it and sought to have the action dismissed. In support of its motion, the defendant asserted that it had never been present in New York.
The court however, refused to dismiss the action finding that the defendant's Chicago counsel had communicated with the plaintiff New York firm via the phone and mail about the New York lawsuit and that the defendant's Chicago counsel's activities could be imputed to it for purposes of long arm jurisdiction. Id. at 99. The court concluded that the defendant's Chicago counsel had contacts in New York that were meaningful and purposeful and, having been performed as the defendant's agents, were imputed to the defendant. Id. See also Reiner v. Durand, 602 F. Sup. 849
(S.D.N.Y. 1985) (the court found personal jurisdiction over the defendant to exist where the defendant's agent had numerous purposeful contacts with the forum state and such acts were imputed to the defendant).
Marshall's reliance on Rosenblit v. Danaher, 206 Conn. 125, 537 A.2d 145
(1988) is misplaced. In Rosenblit, two Connecticut residents traveled to Massachusetts and, with a Massachusetts resident, hired an attorney, who resided and practiced law in Massachusetts, to bring an action that arose out of a series of contacts by the plaintiffs with Massachusetts residents. When the plaintiff sought to sue the Massachusetts attorney in Connecticut under the long arm statute on the basis that the defendant attorney attended one meeting in Connecticut, the trial court concluded that the attendance at one meeting was insufficient contact with Connecticut and dismissed the action for lack of personal jurisdiction. The Supreme Court affirmed concluding that the attendance at one meeting in Connecticut was insufficient to confer jurisdiction under the long arm CT Page 2879 statute. Id. at 141.
Unlike the defendant in Rosenblit, Marshall had significant purposeful contacts with Connecticut. Marshall undeniably retained Connecticut attorney Scott Karsten to represent him in an action in the Connecticut District Court. Attorney Karsten thereafter, as agent for Marshall, retained Updike Kelly to assist with the prosecution of Marshall's claims in Connecticut and then in New York. Marshall had numerous contacts with Updike Kelly via mail and phone in Connecticut and was aware of the fact that substantial legal work on his behalf was being performed in Connecticut.
Even if one concluded that Marshall's contact with Connecticut was insufficient under the long arm statute, his agent Attorney Karsten[1]
had continuous purposeful contact with Updike Kelly in Connecticut in order to advance Marshall's claims. Under the Reiner and Kazlaw
decisions, Karsten's connections with Connecticut can be imputed to Marshall. Both Marshall's own conduct and Attorney Karsten's conduct as his agent are sufficient to constitute the "transaction of business" within the purview of Connecticut's long arm statute.
"The United States Constitution allows courts to assert jurisdiction over non-resident defendants only when minimum contacts exist between the defendant and the forum state. The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend "traditional notions of fair play and substantial justice. InternationalShoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95
(1945)." Gaudio v. Gaudio, 23 Conn. App. 287, 299, 580 A.2d 1212 (1990) (quoting Frazer v. McGowan, 198 Conn. 243, 252, 502 A.2d 905 (1986).
Whether sufficient minimum contacts exist is clearly dependent on the facts of each case. Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 52,459 A.2d 503 (1983). The United States Supreme Court has held that the test to be applied in determining the reach of personal jurisdiction is two-pronged: 1) whether the nonresident party has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state, and 2) whether the exercise of jurisdiction based on those minimum contacts would offend traditional notions of fair play and substantial justice. Asahi Metal Industry Co. v. Superior Court,480 U.S. 102, 111-12, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); Panganibanv. Panganiban, 54 Conn. App. 643, 639, 736 A.2d 190, cert. denied251 Conn. 920, 742 A.2d 359 (1999). "As long as it creates a substantial connection with the forum state, even a single act can support jurisdiction. " McGee v. International Life Insurance Co., 355 U.S. 220,223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Panganiban, 54 Conn. CT Page 2880 App. at 639.
For purposes of the minimum contacts inquiry "the court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction . . . For purposes of this initial inquiry a distinction is made between `specific' jurisdiction and `general' jurisdiction. " Panganiban,54 Conn. App. at 639.
A state court will have "specific" jurisdiction over a nonresident defendant whenever the defendant has purposefully directed his activities at residents of the forum and the litigation has resulted from alleged injuries that arise out of or relate to those activities. Thompson v.Chemical Bank, 234 Conn. 281, 288, 661 A.2d 595 (1995). "General jurisdiction" will exist even where the litigation does not arise out of or relate to the nonresident's activities in the forum as long as the defendant had "continuous and systematic general business contacts" with the state. Id.
This court undeniably has "specific jurisdiction" over Marshall. Marshall retained two I Connecticut law firms to represent him in a court located in Connecticut and almost all of the legal services performed on his behalf took place in Connecticut. Marshall was aware of this fact by regular communications from defendant Stewart Beckett (a Connecticut resident), Attorney Karsten and attorneys at Updike Kelly. The claim now before this court arises out of Marshall's failure to pay for the legal services performed on his behalf.
The second stage of the due process inquiry is whether the assertion of personal jurisdiction is reasonable under the particular circumstances of a case. The U.S. Supreme Court has held that a court must evaluate the following factors as part of the reasonableness analysis: 1) the burden that the exercise of jurisdiction will "have on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies." Metropolitan Life Ins. v. Robertson-CECOCorp., 84 F.3d 560, 567-68 (2d. Cir.) cert denied 519 U.S. 1006,117 S.Ct. 508, 136 L.Ed.2d 398 (1996).
An analysis under these five factors supports the exercise of jurisdiction over Marshall. First, there is no undue burden on Marshall to travel to Connecticut to defend the case. Marshall has already retained Connecticut counsel and would presumably continue to use Connecticut counsel should the claims against him proceed. Additionally, CT Page 2881 Marshall apparently did not find pursuing a claim in a court in Connecticut to be an undue burden on him in the case against ALPA. He should not now be allowed to claim an undue burden simply to avoid jurisdiction.
Second, Connecticut has a great interest in adjudicating a claim for fees by a Connecticut law firm for services rendered in Connecticut. As the New York court in Mayer v. Goldhaber stated, "to hold to the contrary would be to hold that a [Connecticut] attorney retained by a nondomiciliary to perform legal services in this state cannot enforce in the courts of this state the obligation of his client to pay for the services contracted for and rendered." 313 N.Y.S.2d 87, 89 (1969).
With respect to the third factor, Updike Kelly has an obvious interest in obtaining convenient and effective relief through the courts in the state where it is located, where it performs its legal services and where its attorneys are admitted to practice law. The defendants in this action, Updike Kelly's former clients, reside all over the country and it would not be reasonable to require the plaintiff to bring actions in the state of residence of Mr. Marshall or any other defendant.
Factors four and five also support the exercise of personal jurisdiction. It is more efficient to resolve the issues in the Connecticut forum. All of the witnesses and documentary evidence required at trial are all still located in Connecticut. Finally, all states share a social policy interest that companies, including law firms, who are located and perform services within their borders, are able to seek payment for the services in their courts.
It is more than reasonable and of no surprise to Marshall for the plaintiff to hale Marshall into a Connecticut court with respect to the fees and costs owed to his Connecticut attorneys.
Connecticut General Statutes § 52-59b (c) provides that service can be made upon a nonresident defendant by serving a true and attested to copy of the complaint upon the Secretary of State and by sending a like true and attested to copy of the complaint via certified or registered mail to the defendant's last known address. Section 52-59b (c) further provides that service upon the Secretary of State "shall have the same validity as if served upon the nonresident individual. personally." "The requirement that the copy be mailed to his `last known address' does not mean the last address known to the plaintiff but does mean the last address of the defendant so far as it is known, that is, by the ordinary circumstances of life would know it." D'Occhio v. Connecticut Real EstateComm'n, 189 Conn. 162, 171, 455 A.2d 833 (1983) (quoting Hartley v.Vitiello, 113 Conn. 74, 8, 154 A. 255 (1931)). CT Page 2882
The plaintiff has submitted an affidavit of Sally Choate, one of its paralegals, which states that prior to commencing this action in January 1999, Updike Kelly reviewed the personal questionnaire completed by Marshall during its representation of him and determined what address Marshall had directed materials be sent to him. The address located was an address in New York. During the course of its representation of Marshall up through early 1997, all materials were sent to this address and, if Marshall was not located at this address, the person with whom he lived at that address, Carla Scheidker-Levesque, would forward the materials to Marshall. The plaintiff has also submitted an affidavit to establish that its investigation revealed that Ms. Levesque still resides at the above New York address, and therefore, Updike Kelly believes Marshall received a copy of the Complaint. Believing that Marshall was still located at that address and that if he was not there, that any materials sent there would be forwarded to him, service of the Complaint was made at the address in New York. Updike Kelly had no reason to search elsewhere for Marshall as it believed he was still in New York. Consequently, Updike Kelly served Marshall at the last known address it located in January 1999 and complied with the long arm statute's service requirements. As such, jurisdiction over Marshall exists.
For the foregoing reasons, the Motion to Dismiss the action as to John A Marshall is denied.
By the court,
Aurigemma, J.